THE STATE ex rel. EDWARD T. CAMPBELL and
    AMERICAN   INSURANCE   COMPANY   v.
    CHRISTIAN BRINKOP, President of the Board
    of Assessors, and EDMOND KOELN, Collector,
    of the City of St. Louis.

In Banc, December 16, 1911.

1. **TAXATION: Stock and Property of Corporation: Double Taxation.** The stockholders cannot be taxed on their stock and the corporation taxed on its property. That would be double taxation, whether the tax is paid by the company or by the stockholders severally. When once the actual property of a corporation is reached and taxed, whether through the corporation directly or the stockholders indirectly, the law is satisfied. The statutes provide that certain corporations (manufacturing, mercantile, etc.) shall themselves be assessed for

and pay the taxes on their actual properties, and that the taxes on the actual properties of certain others (banks, insurance companies) shall be assessed against and paid by their stockholders; but they do not provide that both the corporation and its stockholders shall pay taxes on the same actual properties owned by the corporation.

2. ———: ———: ———: **Bank Stock Held by Insurance Company.** Shares of stock in banks and trust companies located in this State, owned and duly assessed and taxed against the insurance company as owner, the taxes on which are paid by the banks and trust companies, which are reimbursed by the insurance company, as the law requires, are not subject to further taxation against the insurance company—nor against the stockholders of the insurance company.

3. ———: ———: **Taxation of Banks and Insurance Companies.** Banks and insurance companies are not assessed for taxation on the personal property owned by them, but the tax is levied against the shares of stock held by the stockholders. This method of bank taxation was adopted for the purpose of putting State banks on a footing with national banks, because by national law, while much of the personal property of a national bank, such as bonds, is not taxable, its shares of stock are. The real estate of a bank is taxed against the bank, and the personal property against the stockholders, and thereby its entire property is taxed once, but only once.

4. ———: ———: **Double Taxation: Not Authorized by Statute.** The State has no authority to levy a tax against a bank based on the value of its taxable personal property, and also a tax on the shares of stock held by its stockholders based on a valuation of the same property. That would be double taxation. The Legislature did not intend to tax the bank's personal property twice, once directly against the bank, and again indirectly against the stockholder; nor has it done so. Nor has the Legislature, by express terms or necessary implication, provided for double taxation in any case.

5. ———: ———: ———: **Uniformity.** To collect a double tax on property owned by a bank or an insurance company, and a single tax on the same kind of property held by an individual or a manufacturing company, would not be uniformity in taxation.

6. ———: ———: ———: **In Proportion to Value.** It would not be taxation in proportion to its value, to value property twice under different forms for the same purpose—for instance, to tax the personal property of a bank directly against the bank, and indirectly against the stock of the stockholder at the same valuation.

State ex rel. v. Brinkop.

7. ————: ————: ————: **Government Bonds.** In estimating the value of bank stocks or insurance company stocks for the purpose of taxation, Government bonds owned by the bank or company are to be taken into account and the stock appraised as if the money invested in them were invested in other personal property, although such bonds are not themselves taxable; but that is far from holding that the actual properties of the bank or company can be doubly taxed; it is simply holding that the stock only can be taxed.

8. ————: **Stock of Manufacturing Company: Held by Insurance Company: Double Taxation.** An insurance company cannot be assessed or taxed upon shares of stock of a manufacturing or business corporation organized under the laws of this State, owned and held by it, where the properties of said corporations were all duly assessed for the taxes and the taxes were paid by the corporations. Since the industrial corporations paid taxes on all their properties, to permit their stockholders to be taxed for the amount of stock held by them would be to twice tax the properties of said companies.

9. ————: **Personalty Follows the Person.** *Mobilia sequuntur personam* is a maxim of international law, applied chiefly, if not exclusively, to the distribution of an intestate's estate. It has never been applied in this State to require a resident to list for taxation personal property owned by him located in another State—not because the property is liable to taxation in another State, but because it is not liable to taxation in this State.

10. ————: ————: **Double Taxation.** An attempt to tax in this State property located outside of the State would not be invalid as double taxation, because this State is not chargeable with the consequences of taxes levied in another State.

11. ————: **On Stock of Corporation: Property Outside of State.** Property located in another State is not directly taxable in this State, or at least is not included in the property rendered liable to taxation by the statutes; nor has the Legislature intended to levy a tax on such outside property in the guise of taxing the shares of stock of the corporation which owns it. Neither corporations nor individuals are required to pay taxes in this State on their property located outside of this State— neither the corporation directly, nor its stockholders indirectly, are required to pay taxes on such property.

12. ————: ————: ————: **Insurance Premiums Due from Non-residents.** Premiums due June the 1st, to a fire insurance company organized under the laws of this State and doing business here, on policies issued by it outside of this State, on property situated outside of this State, the premiums being

payable outside of the State by non-residents, are not taxable in this State against the company.

13. ————: Insurance Company: Money Outside of This State. A domestic insurance company is not required to pay taxes in this State on money deposited in a bank located outside of this State, on June 1, kept by it in such bank in good faith, subject to check, with no intent to avoid taxation thereof in this State.

14. ————: Unlawful Assessment: Remedy: Certiorari. Relator, claiming that certain of its properties had been unlawfully assessed for taxation by the assessors, after an unavailing appeal to the local board of equalization, filed its petition in the Supreme Court for a writ of *certiorari*, and the writ being issued, the court holds that the assessment was illegal, and quashes the record thereof.

## Certiorari.

Record quashed.

*A. & J. F. Lee* and *Charles M. Polk* for relators.

(1) It was unlawful to include in the assessment of the shareholders of the insurance company the shares of stock owned by the insurance company on June 1, 1909, in national banks, in a State bank and in a trust company, the latter two organized under the laws of Missouri and all located in St. Louis, as such shares had already been taxed to the insurance company as the owner thereof and the taxes paid thereon on behalf of the insurance company, and to include the same in the assessment of the shareholders of the insurance company was in violation of the constitutional provisions of this State that taxes should be uniform and that all property should be taxed in proportion to its value, in that the same property of the insurance company was thus taxed twice, such double taxation not being authorized or permitted by any statute of this State, and being contrary to the decisions of the courts of this State. Constitution, art. 10, secs. 3-4; secs. 7098 and 11357, R. S. 1909; Han-

nibal, etc. Railroad v. Schacklett, 30 Mo. 550; State v. Railroad, 37 Mo. 265; Life Ins. Co. v. Charles, 47 Mo. 462; Scotland County v. Railroad, 65 Mo. 123; State v. Railroad, 77 Mo. 202; Valle v. Ziegler, 84 Mo. 214; State v. Railroad, 196 Mo. 523; East Livermore v. Banking Co., 69 Atl. (Maine) 306; State v. Union Depot Co., 42 Minn. 142; School Directors v. Bank, 8 Watts, 289; Commonwealth v. Life & Trust Co., 9 Pa. Dist. 479; Commonwealth v. Coal & Navigation Co., 162 Pa. 603; Commonwealth v. Coal Co., 156 Pa. 488; Burke v. Badlam, 57 Cal. 594; State v. Simmons, 70 Miss. 485; Mail Co. v. Barbour, 88 Ky. 73; Gillespie v. Gaston, 67 Tex. 599; Security Co. v. Hartford, 61 Conn. 89; Bank v. Mumford, 4 R. I. 478; In re Newport Reading Room, 21 R. I. 440; Frederick Co. v. Bank, 48 Md. 117; Gordon v. Baltimore, 5 Gill (Md.), 231; Tax cases, 12 Gill & J. (Md.) 117. (2) It was unlawful to include in the assessment of the shareholders of the insurance company the shares of stock owned by the insurance company on June 1, 1909, in manufacturing and business corporations, organized under the laws of Missouri and all located in St. Louis, as the property of such corporations had already been assessed and taxed as the property of such corporations for all general taxes assessable and taxable thereon on June 1, 1909, and such taxes had been paid by such corporations, and to include the same in the assessment of the shareholders of the insurance company was in violation of the constitutional provisions of this State that taxes should be uniform and that all property should be taxed in proportion to its value, in that it was double taxation to assess both the property of such corporations and the shares therein owned by the insurance company, such double taxation not being authorized or permitted by any statute of this State and being contrary to the decisions of the courts of this State. Authorities under point one. (3) Neither the State nor any of its officers had jurisdiction

to assess and tax the shareholders of the insurance company upon the insurance premiums due from non-residents of Missouri, payable to the insurance company outside of Missouri, for insurance policies executed by the insurance company outside of Missouri, upon property outside thereof, due on policies subject to cancellation at any time at the instance of either insurer or insured, such cancellation requiring proportionate abatement of the premium unearned at the time of cancellation, and on which premiums the insurance company was assessed and paid taxes to the states in which such non-residents lived, because: 1st, Such premiums were not property within the State of Missouri; 2d, They were not such property as the laws of Missouri seek to tax. R. S. 1909, sec. 11337; State ex rel. v. Howard County, 69 Mo. 454; Valle v. Ziegler, 84 Mo. 214; State v. Taylor, 47 Mo. 594; Wilcox v. Ellis, 14 Kas. 588; Fisher v. Commissioners, 19 Kas. 414; Poppleton v. Yamhill County, 18 Ore. 377; People v. Smith, 88 N. Y. 576. (4) Neither the State nor any of its officers had jurisdiction to assess and tax the shareholders of the insurance company upon a bank deposit of the insurance company subject to its check, kept by it in good faith outside of this State with no intent to avoid the taxation thereof in Missouri and taxable in the State were kept, because: 1st, Such premiums were not property within the State of Missouri. 2d, They were not such property as said laws seek to tax. Authorities under point three.

*Lambert E. Walther* and *William E. Baird* for respondents.

(1) The tax in question, like the tax in the case of banks and trust companies, is a tax upon the shares in the company and not a tax upon the property of the company. Bldg. & Savings Assn. v. Lightner, 42 Mo. 421; Lionberger v. Rowse, 43 Mo. 67; Ins. Co. v.

Charles, 47 Mo. 373; State ex rel. v. Board of Assessors, 56 Mo. 503; Springfield v. Bank, 87 Mo. 441; State ex rel. v. Catron, 118 Mo. 280; State ex rel. v. Bank, 160 Mo. 640; State ex rel. v. Shryack, 179 Mo. 424; State ex rel. v. Bank, 180 Mo. 717; State ex rel. v. Bank, 196 Mo. 516. (2) In determining the value of the shares there must be considered all the property of the corporation except its real estate, legal reserve and unpaid policy claims. R. S. 1909, secs. 7098 and 11357; Savings Assn. v. Lightner, 47 Mo. 393; St. Louis Ins. Co. v. Charles, 47 Mo. 373; State ex rel. v. Catron, 118 Mo. 280; State ex rel. v. Bank, 160 Mo. 640; State ex rel. v. Shryack, 179 Mo. 424. (3) The tax being a tax on the shares of stock in the hands of the shareholders and not a tax on the property of the company, it is proper and legal, in fixing the value of the shares, to include property of the company which has already been taxed to the company or which is exempt from taxation. R. S. 1909, secs. 7098 and 11357; Savings Assn. v. Lightner, 47 Mo. 393; State ex rel. v. Shryack, 179 Mo. 424. (4) Although the property included in fixing the value of the shares has been taxed to the company or is exempt from taxation in this or any other State, it is not double taxation to consider such property in determining the value of the shares for the purpose of taxing the shareholders; because the shares of stock are an independent and distinct species of property. Cases cited under points 1, 2 and 3; Cooley on Taxation (2 Ed.), pp. 225, 231 and 232; Van Allen v. Assessors, 3 Wall. 573; Lionberger v. Rowse, 43 Mo. 67; Savings Assn. v. Lightner, 47 Mo. 393; Lionberger v. Rowse, 9 Wall. 468; Bank v. Britton, 105 U. S. 325; Bank v. Tennessee, 161 U. S. 134; Trust Co. v. Lander, 184 U. S. 111; Bank v. Des Moines, 205 U. S. 503; Hepburn v. School District, 23 Wall. 480; People v. Coleman, 126 N. Y. 433; Bank v. Kinsella, 201 Ill. 31; Bank v. Chambers, 182 U. S. 556; Coal Co. v. Commrs., 59 Md. 185; State

v. Ins. Co., 70 Conn. 590; Bank v. Richmond, 94 Va. 316; People v. Commrs., 64 N. Y. 541; Light & Power Co. v. State, 79 Md. 63; Cook v. Burlington, 59 Iowa, 251; Commrs. v. Tile Co., 13 Allen 391.

VALLIANT, C. J.—On the petition of relators a writ of *certiorari* issued to respondents, requiring them to send up the records held by them showing the assessments for taxes, made by the assessors, of the shares of stock of the American Central Insurance Company, and relators' appeal therefrom to the board of equalization, and the action of the board on that appeal, to the end that this court may pass judgment on the legality of the assessment which relators claim to be unlawful. In obedience to the writ the records have been sent up. There is no dispute as to the facts.

The American Central Insurance Company is a Missouri corporation, a fire insurance company. In the assessment made of the value of the stock of the corporation for taxation the relators say that items were included that should not have been taken into account. The petition states that the insurance company, by one of its chief officers, made its return to the assessor of all the property taxable, as the property of the corporation, against its shareholders, which amounted to $734,848.55, which, according to the uniform rule of equalization adopted by the board of equalization, should have been assessed at fifty-five per cent of its actual value, that is, $404,166.69, but the assessor added to the list of property returned by the corporation certain other items, which increased the amount of actual values to $2,938,074, of which fifty-five per cent was $1,615, 950. It appears from the petition that, after the return above mentioned, an assistant secretary of the company, in the absence of the president and without authority, sent a statement to the assessor of the assets of the corporation contain-

238 Sup.—20

ing the items which it is now claimed were improperly listed for taxation, and it was upon that information that the assessor acted in adding those items to the return previously made by the company; that as soon as it was discovered, the company applied to the assessor for its correction, and on his refusal appealed to the board of equalization, which also refused to strike those items from the list. It is stipulated, however, that that act of the assistant secretary in no way estops the relators from questioning the legality of the assessment.

The items in the assessment of which the relators complain are:

1. Shares of stock owned by the insurance company in national banks, a State bank and a trust company, the latter two Missouri corporations and all located in the city of St. Louis, which stocks were of the aggregate value of $1,092,510. These stock were duly assessed and taxed against the insurance company as owner, and the taxes paid thereon were paid by the national banks and the State bank and the trust company, and the insurance company reimbursed the banks and trust company therefor as the law requires.

2. Shares of stock owned by the insurance company of the value of $97,795, in manufacturing and business corporations organized under the laws of this State, the properties of which corporations were all duly assessed against them and paid by the corporations.

3. Premiums due June 1, 1909, to the amount of $328,696.38, on policies issued by the insurance company outside of Missouri, on property outside of the State, the premiums payable outside the State by nonresidents, on which sums the insurance company was assessed and paid taxes in the states in which such nonresidents lived.

4. A bank deposit of the insurance company, subject to its check, kept by it in good faith, on June 1,

1909, in a bank outside of this State, with no intent
to avoid the taxation thereof in Missouri, and taxable
in the State where kept.

The question is whether either or all of those four
items is or are to be taken into account in estimating
the value of the shares of stock held by the sharehold-
ers in the insurance company.

The position of the relators on this question is
that having already paid their taxes on the shares of
stock held by them in the national banks and the Mis-
souri corporations, it would be double taxation to take
those items into account in determining the value of
their shares of stock in the insurance company; and
that as to the premiums due outside the State and
money in a bank outside the State, which are taxable in
the States where located, the statutes of this State do
not authorize their assessment here..

The position of the respondents is that taxation
of the property of a corporation is one thing, and tax-
ation of shares of stock in the corporation is another
thing; that to tax the corporation on the value of its
property and tax the shareholders on the value of
their shares is not double taxation, and that as to the
intangible personal property outside the State the tak-
ing of it into account in estimating the value of the
stock for taxation is not taxing the property.

I.   Generally speaking the title to corporate prop-
erty is in the corporation, while the beneficial inter-
est is in those who own the stock.   The profits derived
from the successful operation of the business of the
corporation is distributed among the shareholders, its
losses fall indirectly on the shareholders, and upon its
dissolution the property is reduced to money and like-
wise distributed.   Thus, although the shareholders do
not own the property, yet they alone are interested
in the profits or losses arising from its use, and they
alone are affected financially by the increased or dimi-

nution of its value.  Therefore, notwithstanding the artificial legal distinction between the ownership of the property and the ownership of the stock, it is true as a matter of fact that whatever affects the property affects the financial value of the stock, and whatever burden the property has to bear is borne by the shareholders, whatever tax it pays is paid at the expense of the shareholders; and when the tax on the property is paid at the expense of the shareholders, and then a tax is levied on the stock owned by the shareholders, taking into account in estimating its value the value of the property on which the tax has already been paid, it is in fact double taxation in spite of the legal fiction.  Under our statute, stock in a bank, Federal or State, is assessed against the shareholder, but the tax is paid in the first instance by the bank, and the bank is reimbursed by the shareholder.  That is merely a mode of convenience in collecting the tax, the effect is the same as if the shareholder paid it in the first instance.  In the case now before us the insurance company was a shareholder of stock in these banks, the banks paid the tax that was assessed against the insurance company stock and the insurance company reimbursed the banks as the law required.  The insurance company in this act took money out of its treasury to pay those taxes.  Whose money was that?  The legal title was in the corporation, but the beneficial interest was in the shareholders of that corporation, the act affected financially no one but those shareholders; in point of fact it was the same in effect as if each shareholder had been assessed by the corporation and paid his share of the tax into the treasury of the company, and if the shareholders are now to pay a tax on those bank stocks in the form of a valuation of their stock in the insurance company, it is in fact double taxation, whatever aspect the legal fiction may give it.

Respondents contend that since property in the corporation is one thing and stock of the corporation is another, it is not double taxation to tax both, but they say, that even if it were double taxation to do so, the State has authority to make the double taxation, and authorities are cited which are claimed to sustain that proposition. On that point we understand the position of the relators to be that, if it should be conceded that the State had such authority, it has not by its statutes authorized such double taxation. That we deem to be the crucial point in this case.

Shares of stock in an insurance company are taxed in the same manner as shares of stock in a bank. [Sec. 11357, R. S. 1909.] Banks and insurance companies are not assessed for taxations on the personal property owned by them, they are assessed only on their real estate; the only tax on the personal property belonging to those corporations is levied in the form of a tax on the shares of stock held by the stockholders. That method of taxation was adopted for the purpose of putting State banks on a footing with national banks in relation to taxation, because whilst much of the personal property of a national bank (United States bonds, etc.) is not subject to taxation, the shares of stock in a national bank are, by an Act of Congress, section 5219, Revised Statutes of United States, 1878, made taxable. Under respondents' theory the State would have authority to levy a tax against a bank based on the value of its taxable personal property and a tax on the shares of stock based on a valuation of the same property, which as we have already said would be double taxation, both taxes being paid by the shareholder in proportion to his shares, the one paid indirectly, the other directly. But the State has not done that; it recognizes that the tax on the shares of stock is in fact a tax on the personal property, and therefore it does not otherwise tax the personal property of the bank. And the intention of the lawmaker

is further shown by the fact that in estimating the value of the stock for taxation it does not take into account the real estate belonging to the bank, because that is assessed to and paid by the bank, and the State is content to levy only one tax on the real estate, and one tax on the personal property belonging to the bank, which is assessed against the stockholder in the guise of assessing his stock. Real estate belonging to a bank affects the value of the stock as much as personal property, and if the purpose of the Legislature was double taxation, it would have included the real estate in estimating the value of the stock; and unless we say that a tax on the shares of stock based on a valuation of the personal property of the bank is a tax on the personal property itself, we must say that the General Assembly has violated the Constitution in exempting that personal property from taxation. The Legislature intended to levy one tax on all the property of the corporation, its real estate and its personal property, and provided that the tax on the real estate should be paid by the corporation, and that on the personal property by the shareholders in the form of a tax on the shares. Thus all the property is taxed, but not taxed twice. Cases are cited by respondents to show that, although Government bonds owned by a bank are not taxable, yet in estimating the value of the shares of stock the bonds may be taken into account. But conceding that proposition, it does not answer the question before us; the question we are considering is not whether property not subject to taxation shall be taken into account, but whether property on which the shareholder has already paid the tax shall be again listed for taxation against him.

If double taxation has crept into our law in any form it is not in the form of express terms or necessary implication, and can only be discovered by strained inference. Uniformity in taxation is required by our Constitution, and it requires all property to be

taxed in proportion to its value. [Art. 10, secs. 3 and 4.] It would not be uniform to collect a double tax on property owned by a bank or insurance company, and a single tax on the same kind of property held by an individual or a manufacturing corporation; and it would not be taxation in proportion to the value of the property if it is valued twice under different forms for the same purpose.

The mode of reaching the value of stock for taxation is thus prescribed in our statute, section 11357, Revised Statutes 1909: ''Persons owning shares of stock in banks, or any joint-stock institution or association doing a banking business, or any insurance company, whether of fire, marine, life, health, accident or other insurance, incorporated under or by any law of the United States or of this State, shall not be required to deliver to the assessor a list thereof, but the president or other chief officer of such corporation, institution or association, shall, under oath, deliver to the assessor a list of all shares of stock held therein, and the face value thereof, the value of all real estate, if any, represented by such shares of stock, together with all reserved funds, undivided profits, premiums or earnings, and all other values belonging to such corporation, company, institution or association; and such shares, reserved funds, undivided profits, premiums or earnings, and all other values so listed to the assessor, shall be valued and assessed as other property at their true value in money, less the value of real estate, if any, represented by such shares of stock.''

The statute there speaks of real estate represented by the shares of stock, ''together with all reserved funds,'' etc., showing that it intended to say that the stock represented the property. But the real estate was to be deducted from the assessment against the shares of stock, because the tax on that was to be paid by the bank. The intention of the Legislature to

tax all the taxable property of the bank, real and personal, is clearly shown by the statute and the intention to tax it but once is just as clearly shown.

By the charter of the Hannibal & St. Joseph Railroad Company the capital stock of the company was exempt from all State and county taxes. [Laws 1847, p. 156; and Laws 1837, p. 247, l. c. 252, sec. 24.] In the General Revenue Act of 1855, Revised Statutes 1855, p. 1322, it was provided that ''all property owned by incorporated companies, over and above their capital stock'' was made subject to taxation. Under that statute the collector of Marion county in 1858 assessed for taxation the property of the corporation consisting of road bed, depot, shops, rolling stock, etc. The question before this court was whether that property was exempt from taxation under the terms of the charter exempting the stock. The court experienced difficulty in determining what property was to be considered as representing the capital stock, as distinguished from other property owned by the railroad company. The court said: ''It is clear that there was no intention of taxing both the capital stock and the property which was over and above the capital stock. It is only the last which is taxed and the former is expressly exempted. . . . . Capital stock in its strictest signification, exists only nominally; the money or property which it represents is the tangible reality. The one is the representative of the other; and if the stock and the property which it represents are both taxed, the taxation is double.'' Further on in the same opinion the court said: ''A double taxation on the same property is manifestly not intended, either by this enactment or by the provisions of the general revenue law. A double taxation is an absurdity, at least, where the proceeds of the tax go in one direction, since it is in effect an increased rate of taxation merely, and could be more plainly and simply expressed by making it so in terms.'' [Hannibal, etc., Railroad v.

Shackett, 30 Mo. 550.] In a later case construing the
same statute in connection with the same charter pro-
vision, exempting the stock of the railroad company
from taxation, it was held that the stock represented
all the property of the corporation, and to tax it taxed
the property, and to exempt it from taxation exempted
the property. The court said: ''If property of a cor-
poration is taxed in the hands of the stockholders it
cannot be taxed in the hands of the corporation also.
A corporation is taxable like a natural person, but is
not to be taxed twice. . . . . It might be said that
the natural persons, who held the stock, could be taxed
as such persons in respect to the shares of stock owned
by them, and that the corporation, as an artificial per-
son, might be taxed in respect of the real and personal
estate owned by the company, without necessarily in-
volving a double taxation of the same person; but the
taxation would still be double in respect of the same
actual property, the stock certificate merely represent-
ing the several interest of the shareholder in the prop-
erty of the corporation.'' And further the court said:
''It is not easy to see how, in any legal sense, a cor-
poration could own other property than that which
would be represented by the stock in the hands of the
shareholders. The shares of stock might be above or
below par value, according to the amount and value
of the property owned by the corporation, and it is to
be presumed that shares of stock would be taxed, if
subject to taxation, in proportion to their value, like
other kinds of property. [Redf., Railw., 531.] In this
way the whole property would be once taxed against
the natural persons, who are, at last, the only real own-
ers of the property held by the corporation in which
they are the stockholders.'' Those cases show that at
that early date the spirit of our law was against dou-
ble taxation, and that whilst recognizing the propriety
of reaching the property for taxation either through
the stockholders or the corporation, yet when once

reached and taxed the State was satisfied. That is a principle of law so right and just that it pervades all our revenue statutes from that time to the present. Section 11357, above cited, provides for the taxation of property through the medium of the stock and of other property in the hands of the corporation, but the property that is reached through the stockholders is not touched in the hands of the bank, and that which is reached in the hands of the bank is not touched in the hands of the stockholder.

Respondents in their brief say that the decisions from which the above quotations are made were based on the fact that the charter of the Hannibal & St. Joseph Railroad Company vested all the property of the corporation in the stockholders, but in that they are mistaken, as reference to the charter of that railroad company will show. [Laws 1847, p. 156, and Laws 1837, p. 247, l. c. 252, sec. 24.] The charter exempted the stock from taxation, and the court held that was in law equivalent to exempting the property. Other cases referred to in the brief of relators show that the doctrine of the cases above cited has been the doctrine of this court ever since. [St. Louis M. Life Ins. Co. v. Charles, 47 Mo. 462; Scotland County v. Railroad, 65 Mo. 123; State v. Railroad, 77 Mo. 202; Valle v. Ziegler, 84 Mo. 214.] In Scotland County v. Railroad, the stock of the company was exempt from taxation. The court held that a tax on the property which the stock represented was a tax on the stock, and said: "If the exemption of the stock did not extend to the property which the stock represented, the section (exempting the stock) was purely illusory." In State v. Railroad, the court said: "It may be conceded only for the purpose of the argument, what has never been held by any court, that it (the State) could have subjected to taxation the shares of individual stockholders, the capital stock and the property, but the question is, had the Legislature up to 1871 seen proper to do so?"

The court then goes on to say that taxation of the shares of stock is taxation of the property of the corporation, and that to tax the shares against the shareholders and the property against the corporation is double taxation, and that therefore when the tax is levied on the stock it exempts the property. In that case, as is pointed out by respondents, by the charter of the company its capital stock and its property is vested in the stockholders, "and shall be exempt from any public charge or tax whatsoever for the period of five years from and after the passage of this act." The language is peculiar; it shows that the Legislature in 1853 was not as familiar with the art of framing charters for railroad companies as it is now. But it goes to show that the Legislature then appreciated the fact that the words "capital stock" and "property" of the corporation really referred to the same interest, and the object was to make it clear that in exempting the capital stock from taxation the property represented by the stock should also be exempted. But what was said by the court in that case on the subject of double taxation was not based on that peculiarity of the charter, but on the broad proposition that the stock and the property were really one interest, and to tax one was to tax the other, and to tax both was double taxation. In Valle v. Ziegler it was held that when the tax was levied against the property of a manufacturing corporation the shares of stock were not subject to taxation, because the property represented the capital stock, and to tax both would be duplicate taxation. The court said: "An intent to tax both the capital stock and the property of the corporation must be clearly declared, or it will not be imputed to the Legislature." Decisions from the courts of other States to the same effect are cited in the brief of relators, but as our own decisions are explicit on the point we will not consume space in discussing the cases from other jurisdictions.

In none of the cases referred to by relators, nor in any case to which our attention has been called, has this court been called on to say whether under the clauses of our Constitution hereinbefore mentioned a valid statute could be enacted taxing both the property of the corporation and the shares of stock, and it is not necessary to decide that question in this case, because no such statute has been passed by our General Assembly. Therefore the authorities from other jurisdictions cited in respondents' brief to sustain the proposition that a State may tax both the stock and the property need not be discussed.

We do not understand respondents as contending that there is any express provision of our statute authorizing double taxation in the form of a tax on the property and a tax on the shares of stock representing the property, but they draw that inference from the fact that the statute requiring a list of all the personal property of the bank to be given to the assessor to enable him to estimate the value of the shares of stock and there being no express exceptions of personal property on which the taxes have already been paid, or as to which a different mode of collecting the tax has been prescribed, such property is to be included and double taxes are to be paid. Such an inference is not only not the necessary inference, but it is contrary to the spirit of the statute which, by separating the real from the personal, assessing one against the bank and the other against the stockholder, shows an intent to avoid double taxation. If the purpose of the lawmaker had been double taxation, taxing the bank on all its property and the shareholder on the value of his stock, it could have been expressed very much more clearly and in very much fewer words. Reference to respondents' brief will show a number of cases decided by this court interpreting our statute which prescribes the method of taxing banks and insurance companies, which is, that the corporation pays

taxes on the real estate only, while the tax on personalty is levied in the form of a tax on the shares of stock held by the shareholders. In State ex rel. v. Shryack, 179 Mo. 424, the history and development of our statute law on that subject are fully set out in the opinion of the court by Judge MARSHALL and the conclusion is as above stated. In that opinion it is shown that the reason for the plan adopted, that is, assessing the real estate to the corporation and covering the personalty in the form of assessment on the shares of stock, was to put the State banks for taxation on a level with national banks. That case was followed by the case of State ex rel. v. Bank, 180 Mo. 717, in which the same conclusion was reached in opinion by Judge ROBINSON.

Without authority from the United States it was thought that a State could not tax shares in a national bank, and therefore an act of Congress was passed June 3, 1864 (13 Stat. at Large, 111), conferring on States power to tax shares of stock in national banks within their respective borders. Since the national banks all owned Government bonds, which were not subject to taxation, the question arose, under the act of Congress, whether in assessing the value of the shares of stock, the Government bonds belonging to the bank should be taken into account, because, it was said, to do so would be an indirect tax on the bonds. But the Supreme Court of the United States, in Van Allen v. The Assessors, 3 Wall. 573, and in other cases following, decided that the shares of stock in a national bank could be taxed although its entire capital was invested in bonds of the United States; that decision was based on the express terms of the act of Congress conferring that right on the States. And in that case the court drew a distinction between a tax on the bonds and a tax on the shares of stock whose value was based on the bonds. The theory of that case, and the cases following, is that whilst the bonds cannot be

taxed because the law forbids it, the shares of stock may be taxed because the act of Congress expressly permits it. The court was not dealing with common law principles or discussing the question of double taxation. There was no question of double taxation in that case—the bonds were not taxed, the only tax was against the shares of stock.

Respondents refer to Bank v. Tennessee, 161 U. S. 134, from which they quote this sentence: "The capital stock of a corporation and the shares into which such stock may be divided and held by individual shareholders are two distinct pieces of property. The capital stock and the shares of stock in the hands of the shareholders may both be taxed, and it is not double taxation." And Van Allen v. Assessors, above referred to, is cited as announcing that doctrine. As we have already said there was no question of double taxation in the Van Allen Case, nor was there in the case from which the above quotation is taken. In that case the charter of the bank (date 1856) required the corporation to pay to the State annually one-half of one per cent of each share of its capital stock "which shall be in lieu of all other taxes." Under its general revenue statute of 1891, the State undertook to levy a tax on the stock, but the court held that the charter provision was a contract which the State could not violate, and that the exemption applied as well to the increased stock as to the original. But the Tennessee statute also provided "that the surplus and undivided profits in such bank, banking association or other corporation shall be assessable to said bank or other corporation and the same shall not be considered in the assessment of the stock therein." The court held that that surplus could be taxed. The court said that the charter exemption in terms mentioned only the capital stock of the bank and that as the surplus of the bank was not expressly mentioned in the exemption clause it was not to be included. Mr. Justice

WHITE dissented from that part of the opinion which held that the surplus could be taxed. Neither of those cases is authority for double taxation as it is presented in this case.

There are a number of other cases from the same court cited by respondents, but we do not feel justified in occupying time and space to discuss them, because in so far as they are thought to bear on the question before us, as we understand them, they are only to the effect that a tax on the shares of stock in a national bank is not a tax on the Government bonds held by the bank, and they are all based on the construction given the act of Congress in the Van Allen Case, and they are all leveled against the argument that taxing the stock in a national bank is taxing the Government securities. Chief Justice CHASE filed a dissenting opinion in that case, and Justices WAYNE and SWAIN concurred therein.

But relators are not complaining against this assessment on the ground that it includes property not taxable, but on the ground that it includes property on which they have already paid the tax. That distinguishes this case from all the above named cases cited by respondents. Relators concede that in estimating the value of the stock held by the insurance company in the banks, the Government bonds are to be taken into account, and that is all that the Van Allen Case and the cases following it decide.

We hold that to levy a tax on the shares of stock in the State and national banks and trust company, and then to take those shares into account in estimating the tax to be levied on relators' shares of stock in the insurance company, would be double taxation, which our statutes do not authorize.

II.   The same principle applies to the shares of stock owned by the insurance company in the domestic manufacturing corporations, the only difference in

fact being in the mode of assessing and collecting the tax, that is, instead of reaching the property through the shares of stock the tax is levied directly on the property.

III. As to policy accruing premiums and money of the insurance company outside of this State which are subject to taxation in the State where located, a different principle applies. *Mobilia sequuntur personam* is a maxim of international law, and is applied chiefly, if not exclusively, to the distribution of an intestate's estate; it has never been applied in this State to the requiring of a resident to list for taxation personal property owned by him located in another State, not because the property is liable to taxation in the other State, but because it is not liable to taxation in this State. If the property were liable to taxation here and if the State should see fit to tax it, the taxation here would not be double taxation in the sense that we have above used that term, because this State is not chargeable with the consequences of taxes levied in another State. Since, therefore, the property located in another State is not directly taxable here, or at least is not included in the property rendered liable to taxation by our statutes, the question arises was it the intention of our Legislature to levy indirectly a tax on it in the guise of taxing the shares of stock in the corporation which owns the property?

Section 11357, Revised Statutes 1909, requires the president or other chief officers of the company to deliver to the assessor, under oath, a list of the shares of stock "and the face value thereof and the value of the real estate, if any, represented by such shares of stock, together with all reserved funds, undivided profits, premiums or earnings and all other values belonging to such corporation, company, institution or association; and such shares, reserved funds, undivided profits, premiums or earnings, and all other

values so listed to the assessor, shall be valued and assessed as other property at their true value in money, less the value of real estate, if any, represented by such shares of stock." After the assessment, the bank or insurance company pays the tax on the land, but not on the personal property; the personal property being taxed only by taxing the shares of stock which represent the property. That means that the shares of stock take the place of the property which they represent, and which but for the tax on the shares would be subject to a direct tax. If that system of taxation had not been adopted in reference to banks and insurance companies, the system that applies to other corporations would apply to them, and they would make return to the assessor of all their "real estate and personal property subject by law to taxation in this State," in the language of section 11415. But would they, in such case, be required to include in their return property not in this State? If so, then an individual would be required to do the same, for the language above quoted from section 11415 is not limited to corporations, but applies to individuals as well, and besides section 7098, Revised Statutes 1909, in reference to insurance companies, requires that their property "shall be assessed and taxed as the property of individuals."

It is true property outside of the State influences the value of the shares in a commercial sense, and if the shareholder were selling his stock it would be taken into account in fixing the price, but so it would if, instead of taxing the shares, the State had taxed the property directly in the hands of the corporation, and so it would also if the property outside the State consisted of real estate. In taxing the shares of stock in lieu of the personal property which they represent, the General Assembly intended the same revenue re-

238 Sup.—21

sult that would follow the taxing of the property, that is, the taxing of property "made subject by law to taxation in this State."

We have just had occasion in another case decided at this term, State ex rel. v. Lesser, 237 Mo. 310, to review our revenue statutes from 1845 to this date, and we there reached the conclusion that it had never been the policy of this State to tax both the shares of stock and the property which they represent. The older statutes subjected to taxation shares of stock in all corporations and the property of the corporation "over and above that represented by the shares of stock." Where the shares of stock are taxed the property they represent is not taxed, and where the property of the corporation is taxed the shares of stock are not taxed. Double taxation has never been the policy of this State, as would be the case if the stock and the property were both taxed. The policy of our General Assembly has always been to encourage the building up in the State of corporations engaged in business of public utility and promoting the financial advantage of its citizens. Double taxation in the form of a tax on the stock and on the property represented by the stock, would be not only unjust, but impolitic. And it would also be unwise and unjust discrimination to make corporations pay taxes, either directly or indirectly, on their property outside the State, when individuals are not so required. Missouri has within its own borders vast wealth in property on which the tax collector can lay his hands, and it has no occasion to reach out and gather taxes on property which is not under its protection. To take into account, in assessing the value of the shares of stock in this insurance company, property owned by the corporation outside of this State, would be equivalent in effect to requiring the shareholders to pay taxes on such property; our statutes do not authorize such taxation. We hold that the bank

deposits and accruing premiums outside this State, mentioned in relators' petition, are not to be taken into account in assessing the value of the shares of stock.

What we have said in this connection is intended to apply to the facts of this case, wherein it is admitted that the corporation has acted in good faith and has not put any of its property outside this State to avoid taxation.

We hold that the assessment complained of in relators' petition is illegal, and the record thereof should be quashed. It is so ordered. All concur.