# THE STATE ex rel. JOHN L. JOHNSON and LIBERTY CENTRAL TRUST COMPANY v. WILLIAM BUDER, Assessor of City of St. Louis, et al.

### In Banc, July 18, 1922.

1. **TAXATION: Illegal Assessment: Certiorari.** The act of a county board of equalization in assessing property for taxation is judicial, and subject to review on *certiorari*, and if the assessment is illegal it will be quashed.

2. **———: Assessment: Banks: Real Estate and Stock.** Under the statute (Sec. 12775, R. S. 1919), the real estate owned by a bank is to be assessed against the corporation; its personal property is not assessed at all, but the value of the shares of stock is to be assessed against its stockholders, after the value of the real estate owned by the bank is deducted. The real and personal property, all represented by shares of stock, constitute the bank assets, and, in order to ascertain the value of the stock, there must be deducted from the total value of the assets all corporate liabilities; whether they be in the form of a mortgage on the real estate, or otherwise.

3. **———: ———: ———: Mortgage Debt.** Where there is a mortgage debt on a bank's real estate, it is not sufficient, in ascertaining the value of the stock, that its equity of redemption in the real estate be deducted from the value of the stock, but, the real estate being assessed at its true value, there must be deducted from the value of the stock the amount of such mortgage indebtedness. So that where a bank owned real estate carried on its books at $2,366,435.98, upon which there was a mortgage indebtedness of $1,725,000, leaving it an equitable value therein of about $640,000, the amount to be deducted from the gross value of the stock, in addition to other liabilities, was $1,725,000, and not simply $640,000.

4. **———: ———: ———: ———: Resources: Bookkeepng.** In assessing the properties of a bank for purposes of taxation, it is of no consequence that it has listed the entire value of its mortgaged real estate as a part of its resources and the mortgage indebtedness as a liability, for the reason that the net or assessable value of its stock is the amount of its gross assets less its entire indebtedness; and that means that from the gross aggregate of its assets must first be deducted its indebtedness, and from the remainder must be deducted the value of the real estate owned by it, and the final remainder is the assessable value of its stock.

*Certiorari.*

·RECORD QUASHED.

*Fordyce, Holliday & White, William C. Connett* and *Bennett C. Clark* for relators.

(1) The Board of Equalization has totally disregarded the provisions of Section 12775, Revised Statutes 1919, and the decisions of this court construing and applying said law. State ex rel. Miller v. Shryack, 179 Mo. 424; State ex rel. v. Brinkop, 238 Mo. 298; State ex rel. Gardner v. Harris, 227 S. W. 818. (2) These decisions alone are controlling on the question here involved, and the right of the shareholders to deduct the entire value of the real estate which the Trust Company owned and on which it paid taxes is clearly established. This construction is in accord with all prior rulings of this court where the question has arisen in regard to taxation of both stock and property. ·Hannibal & St. Jos. Ry. Co. v. Schacklett, 30 Mo. 558; State v. Hannibal & St. Jos. Ry. Co., 37 Mo. 265; St. Louis Mut. Life Ins. Co. v. Charles, 47 Mo. 462; Scotland County v. Railroad, 65 Mo. 123; State v. Railway Co., 77 Mo. 202; Valle v. Ziegler, 84 Mo. 214; State ex rel. v. Lesser, 237 Mo. 310.

*Henry S. Caulfield* and *George F. Haid* for respondents.

(1) The indebtedness on relators' real estate was not a part of the value entering into the value of its shares of stock, and, therefore, was not deductible from such value. (2) The indebtedness on relators' real estate was not included in the bank's reserved funds, undivided profits, premiums or earnings, because the same had already been deducted from its total resources, and, therefore, was not deductible from the net assets in determining the value of its shares of stock. (3) Section 12775 authorizes the deduction from the total

of the capital, reserved funds, profits, etc., of the bank only so much of the value of the bank's real estate as is actually included in the aggregate of those items.  (4) By the phrase "represented by such shares of stock" is meant such part of the value of the shares of stock as is actually invested in real estate.  Dennis v. First National Bank, 178 Pac. 580.  (5) Corporations are not entitled to exemption from taxation when, under like circumstances, an individual would not also be exempt to the same extent.  State ex rel. v. Tax Commission, 282 Mo. 223.  (6) The entire property of banks is to be taxed to the same extent as property of individuals and other corporations, but the banking corporation pays the real estate tax, and the value of the personal property is assessed against the stockholders.  State ex rel. v. Citizens Bank, 274 Mo. 67; St. Louis Mut. Life Ins. Co. v. Board of Assessors, 56 Mo. 516; State ex rel. v. Tax Commission, 282 Mo. 223.  (7) In construing Section 12775, it is necessary to ascertain the intention of the Legislature and give effect to such intention.  State ex rel. v. Tax Commission, 282 Mo. 219. (8) Exemption from taxation must appear in express terms or necessary implication.  If the law invoked to show exemption is susceptible of any other rational construction, the exemption cannot exist.  State ex rel. v. Board of Equalization, 256 Mo. 463.

HIGBEE, J.—*Certiorari* to quash the action of the Assessor and Board of Equalization of the city of St. Louis in increasing the assessment of the relator, the Liberty Central Trust Company.

The Trust Company, an incorporated bank, on December 27, 1921, delivered to the assessor a verified list of all shares of stock held therein and the face value thereof, the value of all real estate represented by such shares of stock, together with all reserved funds, undivided profits, etc., as required by Section 12775, Revised Statutes 1919.  This statement shows amount of capital, surplus and undivided profits, $4,283,265,

which includes real estate in this State carried on its books at the value of $2,325,436. A part of this real estate was, on June 1, 1921, encumbered by a mortgage, executed by a former owner, to secure the payment of notes for the principal sum of $1,725,000, held by the First National Bank of St. Louis, to which the Trust Company pays the interest, the notes being a part of the liabilities of the Trust Company. All of the real estate was assessed to the Trust Company for the year 1922.

The issue in the case is thus stated by the respondents:

"The sole question for the consideration of this court is whether in determining the value of the stock of the relator bank for the purpose of assessment against the stockholders under the provisions of Section 12775, Revised Statutes 1919, there should be deducted from the amount of the capital, surplus, earnings, profits, etc., the sum of $1,725,000, the amount of the mortgage indebtedness upon the real estate of the bank, although said sum is not included in and does not form a part of the capital, surplus, etc., shown by the books of the bank, and the question arises in this way:

"The Liberty Central Trust Company owned real estate, which it carried on its books at $2,365,435.98 (under 'Resources'), some of which was acquired by it subject to the obligations of the Penco Realty Company, a prior owner, amounting to $1,725,000, shown under the head of 'Liabilities.' The bank's statement further shows capital, surplus and undivided profits of $4,068,197.23 and earnings of $488,845.18 (returned for assessment at $4,283,265), so that the mortgage indebtedness appears upon its books as a liability distinct from the capital, surplus and undivided profits, etc., and therefore is not included in such surplus and undivided profits. The Board of Equalization, therefore, deducted from the capital, surplus and undivided profits the difference between $1,725,000 and $2,365,435.98, the whole value of the real estate, to-wit, about $640,000, and

allowed the latter sum as a deduction from the capital, surplus and undivided profits as the value of the real estate represented by such shares of stock, and also allowed a deduction for certain stocks owned by the bank in other corporations, and fixed the amount to be assessed against the shares of stock, the amount of the difference, to-wit, $3,415,570, as shown by its order on page 23 of the abstract.''

This indebtedness of $1,725,000, being a liability of the Trust Company, it thus appears that the sole question for consideration is whether in determining the value of the stock this liability should be deducted from the amount of the capital, surplus and undivided profits of the company, as stated by respondents.   Section 12775, Revised Statutes 1919, so far as material, reads:

''Persons owning shares of stock in banks, or in joint stock institutions or associations doing a banking business, shall not be required to deliver to the assessor a list thereof, but the president or other chief officer of such corporation, institution or association shall, under oath, deliver to the assessor a list of all shares of stock held therein, and the face value thereof, the value of all real estate, if any, represented by such shares of stock, together with all reserved funds, undivided profits, premiums or earnings, and all other values belonging to such corporation, company, institution or association; and such shares, reserved funds, undivided profits, premiums or earnings and all other values so listed to the assessor shall be valued and assessed as other property at their true value in money, less the value of real estate, if any, represented by such shares of stock.''

It is insisted by respondents that by deducting the $1,725,000 from the total value of the real estate, there remains the sum of about $640,000 as the total amount invested by the company in real estate, and they stress the claim that this sum is the total value of real estate represented by the shares of stock.   It is further said in respondents' brief:

"The bank saw fit to place in its resource column the entire value of the real estate,' and therefore, in order to show the true situation, it became necessary for it to place the amount of the unpaid real estate obligations in its liability column so that its statement of capital stock, surplus, earnings, etc., would properly include only its actual cash investment in the real estate, but this does not in any way change the situation. The fact is that its capital, surplus and earnings account includes only the $640,000 of investment in real estate."

The shares of stock represent the value of all the assets of the corporation. [14 C. J. 385.] Referring to Section 11357, Revised Statutes 1909 (now Sec. 12775, R. S. 1919), VALLIANT, J., in State ex rel. v. Brinkop, 238 Mo. 298, 311, said:

"The statute there speaks of real estate represented by the shares of stock, 'together with all reserved funds,' etc., showing that it intended to say that the stock represented the property. But the real estate was to be deducted from the assessment against the shares of stock, *because the tax on that was to be paid by the bank.* The intention of the Legislature to tax all the taxable property of the bank, real and personal, is clearly shown by the statute and the intention to tax it but once is just as clearly shown." (Italics ours.)

And on page 312, quoting from Hannibal & St. Joseph Railroad Co. v. Shackett, 30 Mo. 550:

"The court said: 'It is clear that there was no intention of taxing both the capital stock and the property which was over and above the capital stock. It is only the last which is taxed and the former is expressly exempted. . . Capital stock in its strictest signification, exists only nominally; the money or property which it represents is the tangible realty. The one is the representative of the other; and if the stock and the property which it represents are both taxed, the taxation is double.' "

Again, on page 313:

"And further the court said: 'It is not easy to see how, in any legal sense, a corporation could own other property than that which would be represented by the stock in the hands of the shareholders. The shares of stock might be above or below par value, according to the amount and value of the property owned by the corporation, and it is to be presumed that shares of stock would be taxed, if subject to taxation, in proportion to their value, like other kinds of property. [Redf., Railw., 531.]'"

The legislation on this subject is reviewed in State ex rel. v. Shryack, 179 Mo. 424. At page 440, MARSHALL, J., said:

"In spite, therefore, of the change of the language employed in the first sentence of the law, the conclusion is inevitable that the true meaning of the Act of 1895 is, that the real estate shall be assessed against the corporation, the personal property of the corporation shall not be assessed at all, and the shares of stock shall be assessed in the names of the shareholders. Thus the domestic corporations and the national banks are put on the same basis, there is no discrimination and the letter and form and substance of the power conferred by the Federal statute are observed. The bank in question is a domestic bank, but the law is the same as to it that it is as to national banks.

"After the assessment is thus made against the shares of stock in the names of the shareholders, it is legal to make the bank pay the tax and recover it from the stockholders."

It is apparent that the purpose of the enactment of Section 12775, Revised Statutes 1919, was to provide a scheme for taxing state and national banks to conform to Section 5219, Revised Statutes of United States. The real estate is assessed to the corporation, as VALLIANT, J., said, because the tax on that was to be paid by the bank; personal property is not assessed at all, but the value of the shares of stock is assessed against the stockholders after deducting the value of the real es-

tate owned by the bank (not the equity of the bank) in order that the bank should be taxed once. The clear purpose is to avoid double taxation. How is the value of the stock which represents all the corporate assets to be ascertained? The real and personal property constitute its assets; all represented by shares of stock. It is too clear for argument that from the total value of the assets there must be deducted the corporate liabilities, because these affect the value of the stock. Unless this deduction is made, the value of the stock will be, to that extent, inflated and fictitious.

No objection has or could be made to deducting other corporate liabilities, but it is objected that this item of indebtedness is secured by a mortgage and that to permit this deduction would be to allow a mortgagor to deduct an incumbrance from the value of his land and tax simply the equity of redemption, when such deduction is not allowed to other mortgagors. But the Trust Company is not asking to be taxed on its equity in the land; it pays its tax on its real estate like any other landowner; it is asking that this liability be deducted from the amount of the capital, surplus, etc., as stated by respondents in their brief. This is simply a liability of the Trust Company, and the fact that it is secured by a mortgage cannot alter its complexion. "In order to ascertain the capital and surplus, it is necessary to find the true value of the gross assets. From this must be deducted debts and liabilities." [State ex rel. v. State Tax Comm., 282 Mo. 213, 220, 225.] This is precisely what the Trust Company did. It deducted its liabilities from the gross value of its assets. That determined the value of its stock. It deducted the value of its real estate from the value of its stock, because it pays the taxes levied on the real estate, not on its equity therein. The taxes on the shares of stock, less the value of the real estate, which is represented by the stock, are charged against the stockholders. The objection to the deduction of this particular liability is that it is secured by a mortgage on the real estate of the

Trust Company and is not an investment of its funds. It is still a corporate liability which affects the value of the shares of stock.

We have examined Dennis v. First National Bank, 178 Pac. (Mont.) 580, holding that in determining the value of bank stock for assessment the full value of real property held by a bank, and not its assessed value, must be deducted, and that a statute requiring the deduction of its assessed value was violative of the state constitution. Manifestly, the ruling does not support respondents' contention.

The action of a Board of Equalization in the assessment of property for taxation is judicial and subject to review on *certiorari.* [State v. St. Louis County Court, 47 Mo. 594; Ward v. Board of Equalization, 135 Mo. 309; State ex rel. Gardner v. Hall, 282 Mo. 425.]

It follows that the action of the Board of Equalization on March 30, 1922, increasing the assessment against the shares of stock of the Liberty Trust Company, from $1,730,570 to $3,415,570, for the taxes for the year 1922, was illegal, and the record of the board making said increase is quashed. *Graves, David E. Blair, Elder* and *Walker, JJ.,* concur; *James T. Blair, C. J.,* concurs in the result.