The State ex rel. United States Bank and Gustave W. Niemen v. Fred Gehner, Assessor of City of St. Louis, et al.—5 S. W. (2d) 40.

The State ex rel. State National Bank and George F. Cochran v. Fred Gehner, Assessor of City of St. Louis, et al.—5 S. W. (2d) 40.

Division One, April 11, 1928.

*Bryan, Williams & Cave* for relators.

*Julius T. Muench* and *Oliver Senti* for respondents; *North T. Gentry,* Attorney-General, of counsel.

SEDDON, C.—The two above-entitled causes, or proceedings, are original proceedings in certiorari, commenced in this court, in which the relators seek to quash the findings and orders of the Board of Equalization of the City of St. Louis, Missouri, made and entered on March 29, 1927, and the record of said Board of Equalization, relating to the assessment (as of June 1, 1926) of the shares of the capital stock of the United States Bank of St. Louis, Missouri, a banking corporation organized and existing under the laws of this State, and relating to the assessment (as of June 1, 1926) of the shares of the capital stock of the State-National Bank of St. Louis, Missouri, a banking corporation organized and existing under and by virtue of the laws of the United States, which assessments were made by respondents for the purpose of taxing the shares of the capital stock of said banking corporations for the year 1927. The first cause (No. 28293) is brought at the relation of, and by, said United States Bank of St. Louis, Missouri, and Gustave W. Niemen, a shareholder of said banking corporation, as relators and petitioners. The second cause (No. 28294) is brought at the relation of, and by, said State National Bank of St. Louis, Missouri, and George F. Cochran, a shareholder of said banking corporation, as relators and petitioners. The respondents in each of said proceedings are Fred Gehner, who was, and now is, the Assessor of the City of St. Louis, and who was, and now is, the *ex-officio* president of the Board of Equalization of said city, and four named individuals, who were the members of said Board of Equalization of said city, and who constituted said board at the time the assessments complained against herein were made.

The two proceedings, aforesaid, are submitted upon the pleadings filed in this court in each of said proceedings, consisting of the relators' application and petition for our original writ of certiorari; the respondents' return to our original writ (which return transmits to this court the record of said Board of Equalization relating to the assessments complained against herein), and relators' motion for judgment, which motion is in the nature of a demurrer to respondents' return to the writ of certiorari. The salient facts are not controverted, and they are clearly set forth in respondents' returns, and in the record of the Board of Equalization transmitted to this

court therewith, filed, respectively, in the above-numbered causes. Relators' motion for judgment, being in the nature of a demurrer to the return, admits the substantive facts pleaded in the return.

The return of respondents filed in Cause No. 28293 sets out, *in haec verba*, the findings and order of respondents, constituting the Board of Equalization of the City of St. Louis, made and entered by said board on March 29, 1927, relating to the assessment of the shares of the capital stock of relator United States Bank, which order, in part, is as follows:

"The Board finds and determines from the evidence that a blank return for state, city and school taxes for the year 1927 was duly served by the Assessor of the City of St. Louis upon the United States Bank of St. Louis, and that said corporation in due and proper time returned the form, on which appeared the following: Amount of capital, $1,000,000; amount of surplus and reserves, $521,921.98; amount of undivided profits, premiums and earnings, $66,261.75; total, $1,588,183.73, which said sum, from said return the Board finds, under the laws of the State of Missouri, is assessable for taxation purposes in the case of the United States Bank.

"The Board further finds and determines that the United States Bank had an item of 'reserve for taxes' in the sum of $30,122.82, representing taxes accrued but not yet payable, and 'reserve for interest,' representing interest accrued but not yet payable, in the sum of $5,764.83; total, $35,887.65, which items were not included in the return made by the bank and which items the Board finds are also assessable.

"The Board further finds and determines that the United States Bank, in making its return, was not entitled to deduct said sums as liabilities in arriving at the value of its shares for taxation, and, by reason of the foregoing facts so found by the Board, the Board orders and directs that the assessment as of June 1, 1926, against the shares of stock of the said United States Bank, be and it is hereby increased by adding to the list of property returned by said bank the said sum of $30,122.82, carried as reserve against taxes accrued on or prior to June 1, 1926, but not payable until after June 1, 1926, and the sum of $5764.83 on account of interest accrued on June 1, 1926, but not payable until after June 1, 1926, or a total of $35,887.65, thereby increasing the assessment of the shares of said bank from the said sum of $1,588,183.73, as shown by the return of said bank, to the sum of $1,624,071.38."

The return of respondents filed in Cause No. 28294 likewise sets out, *in haec verba*, the findings and order of respondents, constituting the Board of Equalization of the City of St. Louis, made and entered by said board on March 29, 1927, relating to the assessment of

the shares of the capital stock of relator State National Bank, which order, in part, is as follows:

"The Board finds and determines from the evidence that a blank return for state, city and school taxes for the year 1927 was duly served by the Assessor of the City of St. Louis upon the State National Bank of St. Louis, and that said corporation, in due and proper time, returned the form, on which appeared the following: Amount of capital, $2,000,000; amount of surplus and reserves, $500,000; amount of undivided profits, premiums and earnings, $298,863.38; total, $2,798,863.38.

"From which total is deducted interest in banking house, Security Building, Fourth and Locust streets, St. Louis, 1,000 shares of Security Building Company, $150,000; stock Federal Reserve Bank, $75,000; United States Liberty Bonds, $520,000; United States Treasury Certificates, $1,100; United States Treasury bonds, $4,680; total deductions, $750,780.

"The Board further finds and determines that of these deductions only the deduction on account of interest in the banking house is allowable, and said deduction is allowed, leaving a net of $2,648,863.-38, which the Board finds, under the laws of the State of Missouri, is assessable for taxation purposes in the case of State National Bank.

"The Board further finds and determines from the evidence that the said State National Bank of St. Louis had an item of 'Reserve for general state and school taxes for 1924, $62,387.26; for taxes for 1925, $66,834.65; for federal income taxes, $4927.91;' total, $134,-149.82, which was not included in the above return made by the bank and which item the Board finds is also assessable.

"The Board further finds and determines that the said State National Bank, in making its return, was not entitled to deduct said sums as liabilities in arriving at the value of its shares for taxation, and, by reason of the foregoing facts so found by the Board, the Board orders and directs that the assessment as of June 1, 1926, against the shares of stock of the said State National Bank of St. Louis be and it is hereby increased by adding to the list of property returned by the said State National Bank of St. Louis the several above disallowed deductions taken by the bank in its return, and that it be also increased by adding to the list of property returned by the State National Bank of St. Louis, on account of taxes assessed for the years 1924 and 1925 and payable, but not paid, on June 1, 1926, the sum of $129,221.91, and on account of federal income taxes accrued on June 1, 1926, but not payable on June 1, 1926, the sum of $4927.91."

The facts recited in the aforesaid findings and orders of respondents, as incorporated in, and transmitted with the return to the writ of certiorari issued in each of the respective causes, constitute the

substantive facts upon which these two proceedings must be ruled and determined.

In the case of the relator United States Bank, it appears from the record that said bank filed with the respondent Assessor of the City of St. Louis its return, as of June 1, 1926, duly verified by the cashier of said bank, showing: Amount of capital stock, $1,000,000; amount of surplus or reserve, $521,921.98; amount of undivided profits, premiums or earnings, $66,261.75; total, $1,588,183.73; number of shares of capital stock, 10,000; amount of real estate, none. On June 1, 1926, the relator, United States Bank, had become liable for the payment of certain general taxes in the sum of $30,122.82, which general taxes had then accrued and had become a lien upon the assets of said bank, but which general taxes were not in fact payable until after June 1, 1926. Likewise, on June 1, 1926, the relator, United States Bank, had become liable to its depositors for interest which had accrued on the accounts of its depositors, and which was then due to its depositors, in the sum of $5764.83, although said amount of interest was not in fact payable to its depositors until July 1, 1926. The relator, United States Bank, did not include those two items of accrued taxes and interest, aggregating $35,887.65, in the verified return filed with the said Assessor of the City of St. Louis, but treated such items as liabilities of the bank, and, therefore, as properly deductible from the gross value of the assets of said bank. The respondent Board of Equalization, by its order of March 29, 1927, added the aggregate amount of said two deducted items, $35,887.65, to the amount of assets returned by said bank, for the purpose of assessing and taxing the shares of its capital stock.

In the case of the relator State National Bank, it appears from the record that said bank filed with the respondent Assessor of the City of St. Louis its return, as of June 1, 1926, duly verified by the president of said bank, showing: Amount of capital stock, $2,000,000; amount of surplus or reserve, $500,000; amount of undivided profits, premiums or earnings, $298,863.38; total, $2,798,863.38; number of shares of capital stock, 20,000; book value of real estate, $150,000. On June 1, 1926, the relator, State National Bank, had become liable for the payment of general taxes for 1924 in the sum of $62,387.26; and for the payment of general taxes for 1925 in the sum of $66,834.65, which said general taxes were due and payable on June 1, 1926, but had not then been paid; and said bank likewise had become liable for the payment of federal income taxes in the sum of $4927.91, which federal income taxes had accrued on June 1, 1926, but were not payable until after that date. The relator, State National Bank, did not include those three items of accrued taxes, aggregating $134,149.82, in the verified return filed with the said Assessor of the City of St. Louis, but treated such items as liabilities of the bank, and,

therefore, as properly deductible from the gross value of the assets of said bank. The respondent Board of Equalization, by its order of March 29, 1927, added the aggregate amount of said three deducted items, $134,149.82, to the amount of assets returned by said bank, for the purpose of assessing and taxing the shares of its capital stock.

Learned counsel for the respective parties have treated the two separate causes, or proceedings, as involving the same, or identical, questions and issues of law, and so they have argued and briefed the two causes as a single cause, or proceeding. Our opinion herein is therefore determinative of both proceedings.

The legal questions involved and presented for our determination in the two instant proceedings are thus clearly stated by learned counsel for relators in their brief herein: "Those questions are whether, in arriving at the net value of the assets of a bank (state or national), and thus at the value of the shares of the capital stock of such bank, for the purpose of taxation, such bank is entitled to treat as liabilities, and to deduct from the gross value of its assets, (1) any and all general taxes which, on the date of determining the value of such shares of capital stock, the bank owes and which, at the time, are actually payable, although not in fact paid; (2) any and all general taxes which, on the date of determining the value of such shares of capital stock, have accrued and become a lien, but which are not actually payable until after such date; and (3) any interest which, on the date of determining the value of such shares of capital stock, has accrued and for the payment of which the bank is liable, but which interest is not payable by the bank until after the date of determining the value of the shares of its capital stock." As otherwise expressed in the brief of relators, the legal question involved herein is "whether, in arriving at the value of the shares of the capital stock of any bank (state or national), for the purpose of taxing such shares of stock, we are to seek the real, true and actual value of such shares, and, therefore, to deduct from the gross value of the assets of such bank the actual liabilities of such bank."

Respondents contend that it is the duty of the chief officers of the relator banks (prescribed by Sec. 12775, R. S. 1919) to include in the corporate returns of said banks, as of June 1, 1926 (for the purpose of assessing and taxing the shares of the capital stock of said banks) all of the moneys or funds of said banks, including those moneys or funds which represent, and which are reserved by said banks for the payment of, general taxes which are due and payable, but not then actually paid, and general taxes and interest items which had then accrued, but which were not then payable; and, furthermore, that there is no positive provision in the statutes and laws of this State which authorizes the relator banks to deduct any of such items of general taxes and interest from their corporate returns made

for the purpose of assessing and taxing the shares of the capital stock of said banks. In support of such contentions, respondents argue that tax exemptions are in derogation of the rule, or principle, of equality in taxation, and therefore tax exemptions are not favored by the courts, but are construed strictly against those claiming exemption; and respondents urge that the policy of the law of this State is that no property other than that specifically excepted in the organic and statutory law of the State shall be exempt from taxation.

Under the scheme, or system, of taxation in effect in this State, banks (whether they be domestic or national) pay taxes only upon the assessed value of the real estate corporately owned by them. All personal property, of whatsoever kind or nature, corporately owned by banks, domestic or national, located in this State, and lawfully subject to taxation in this State, is not taxed directly, but is taxed indirectly, by levying a tax against the shares of the capital stock of each bank. By the enactment of a Federal statute (Section 5219, Revised Statutes of the United States, 1878), the Congress of the United States has sanctioned and allowed the several States to tax, upon their actual value, all the shares of national banking associations or corporations located within any such State. Pursuant to the authority granted by said act of Congress, the Legislature of this State enacted Section 12775, Revised Statutes 1919, providing for the assessment and taxing alike of all the shares of the capital stock of both domestic and national banks in the manner authorized and allowed by said Section 5219, Revised Statutes of the United States. The applicable portion of Section 12775, Revised Statutes 1919, is as follows: "Persons owning shares of stock in banks, or in joint stock institutions or associations doing a banking business, shall not be required to deliver to the assessor a list thereof, but the president or other chief officer of such corporation, institution or association shall, under oath, deliver to the assessor a list of all shares of stock held therein, and the face value thereof, the value of all real estate, if any, represented by such shares of stock, together with all reserved funds, undivided profits, premiums or earnings and all other values belonging to such corporation, company, institution or association; and *such shares*, reserved funds, undivided profits, premiums or earnings and all other values so listed to the assessor *shall be valued and assessed* as other property *at their true value in money*, less the value of real estate, if any, represented by such shares of stock." (Italics ours.)

The history, development and purpose of the foregoing legislation, federal and state, respecting the assessment and taxation of shares of the capital stock of banking corporations, has been thoroughly and exhaustively reviewed in the prior decisions of this court. [State ex rel. v. Shryack, 179 Mo. 424; State ex rel. v. Lesser, 237

1056

Mo. 310, 326; State ex rel. v. Brinkop, 238 Mo. 298; State ex rel. v. Buder, 295 Mo. 63; State ex rel. v. Buder, 308 Mo. 237.]

In State ex rel. v. Shryack, supra, MARSHALL, J., speaking for this division of this court, in discussing the purpose and intent of our state statute aforesaid, said (179 Mo. l. c. 440): "The conclusion is inevitable that the true meaning of the Act of 1895 (now Sec. 12775, R. S. 1919) is, that the real estate shall be assessed against the (bank) corporation, the personal property of the corporation shall not be assessed at all, and the shares of stock shall be assessed in the names of the shareholders. Thus, the domestic (bank) corporations and the national banks are put on the same basis, there is no discrimination and the letter and form and substance of the power conferred by the Federal statute are observed. The bank in question is a domestic bank, but the law is the same as to it that it is as to national banks. After the assessment is thus made against the shares of stock in the names of the shareholders, it is legal to make the bank pay the tax and recover it from the stockholders. [Sec. 9155, R. S. 1899; National Bank v. Commonwealth, 9 Wall. 353; Aberdeen Bank v. Chehalis Co., 166 U. S. 440.]" (Parentheses ours.)

In State ex rel. v. Buder, 308 Mo. 237, 244, WHITE, J., speaking for this court, en banc, said: "Section 12775, Revised Statutes 1919, for the purpose of taxation, divides corporations into two classes; it provides that 'the property of manufacturing companies and other corporations named in Article VII, Chapter 90, . . . . shall be assessed and taxed as such companies or corporations in their corporate names.' It then provides that banks and other institutions doing a banking business shall list to the assessor all shares held therein at their face value, and the value of the real estate represented by such shares of stock, and 'all other values,' belonging to such corporation. The real estate owned by such corporation is assessed to the corporation, and 'all other values' so listed are valued at their 'true money value,' as the values represented by such shares of stock, for the purpose of taxing them. The tax on such shares is first paid by the corporation, which is reimbursed by the shareholders. Thus, the shares in (the) corporations first mentioned are not taxed, but the corporations pay the tax on all taxable property held by them. The tax on shares of stock in banks, and in associations doing a banking business, is paid by the shareholders. Under an act of Congress, a State is authorized to tax the shares in national banks at their actual value. [Van Allen v. Assessors, 3 Wall. 573; State ex rel. v. Shryack, 179 Mo. l. c. 439; State ex rel. v. Lesser, 237 Mo. l. c. 326.] Under the authority of that act of Congress, Section 12775, Revised Statutes (Mo.) 1919, provides for taxing shares of stock in a bank, or an association doing a banking business, in the manner mentioned."

If, as announced in the foregoing decisions of this court, the purpose and intent of the aforesaid legislation, federal and state, is to tax the shares of the capital stock of banks, domestic and national, at their *actual value,* how is the *actual, or real, value* of such shares of stock to be fixed and determined by the taxing authorities, or officers, of the State? If the actual, or real, *value* of the shares of the capital stock of a banking corporation is the property, or thing, that is intended to be taxed under the Missouri statute, which state statute was enacted in conformity with the Federal statute aforesaid, is such actual or real value of the shares of corporate stock to be determined upon the basis of the gross value of the assets of such banking corporation, after deducting therefrom the value of such real estate as is corporately owned by such bank; or, is such actual or real value of the shares of stock to be fixed and determined by deducting from the gross value of the assets (less the value of all real estate corporately owned by the bank) all debts and liabilities of the bank which have accrued at the time the value of such shares of stock is determinable, and for the payment of which debts and liabilities the bank is then legally liable?

A question somewhat like that involved in the instant proceedings was before this court, en banc, in State ex rel. Johnson v. Buder, 295 Mo. 63, an original proceeding in *certiorari* commenced in this court, wherein a domestic trust company, or incorporated bank, pursuant to the statute aforesaid (Sec. 12775, R. S. 1919), filed with the Assessor of the City of St. Louis its verified return, for the purpose of assessing and taxing the shares of its capital stock. The bank owned real estate valued and assessed in the sum of $2,325,436, which real estate was subject to a principal mortgage indebtedness of $1,725,000, incurred by a prior owner of said real estate, but for the payment of which mortgage indebtedness the bank, as the corporate owner of said real estate, stood liable. At the time the bank filed its verified return with the assessor, the principal mortgage indebtedness of $1,725,000 aforesaid was not then due and payable, but said mortgage indebtedness became due and payable at some date subsequent to the filing of said verified return. The relator bank therein insisted that, inasmuch as the said mortgage indebtedness was a liability of the bank, such liability should be deducted from the gross value of the assets of the bank, less the value of its real estate, whereas the respondent taxing authorities took the position that only the value of the bank's equity of redemption in the real estate of the bank should be deducted from the gross value of the assets, in determining the value of the shares of the capital stock of the bank, for the purpose of the assessment and taxation of said shares of stock. We therein said, speaking through HIGBEE, J., (l. c. 67 et seq.) : "This indebtedness of $1,725,000, being a liability of the Trust Company, it thus ap-

pears that the sole question for consideration is whether, in deter-
mining the value of the stock, this liability should be deducted from
the amount of the capital, surplus and undivided profits of the com-
pany. . . . It is insisted by respondents that by deducting the
$1,725,000 from the total value of the real estate, there remains the
sum of about $640,000 as the total amount invested by the company in
real estate, and they stress the claim that this sum is the total value
of real estate represented by the shares of stock. . . . The shares
of stock represent the value of all the assets of the corporation. [14
C. J. 385.] . . . It is apparent that the purpose of the enactment
of Section 12775, Revised Statutes 1919, was to provide a scheme for
taxing state and national banks to conform to Section 5219, Revised
Statutes of United States. The real estate is assessed to the corpo-
ration, . . . because the tax on that was to be paid by the bank;
personal property is not assessed at all, but the value of the shares
of stock is assessed against the stockholders after deducting the value
of the real estate owned by the bank (not the equity of the bank) in
order that the bank should be taxed once. The clear purpose is to
avoid double taxation. How is the value of the stock which represents
all the corporate assets to be ascertained? The real and personal
property constitute its assets; all represented by shares of stock. *It
is too clear for argument that from the total value of the assets
there must be deducted the corporate liabilities, because these affect
the value of the stock. Unless this deduction is made, the value of the
stock will be, to that extent, inflated and fictitious.* No objection has
or could be made to deducting other corporate liabilities, but it is
objected that this item of indebtedness is secured by a mortgage and
that to permit this deduction would be to allow a mortgagor to de-
duct an incumbrance from the value of his land and tax simply the
equity of redemption, when such deduction is not allowed to other
mortgagors. But the Trust Company is not asking to be taxed on its
equity in the land; it pays its tax on its real estate like any other
landowner; it is asking that this liability be deducted from the
amount of the capital, surplus, etc., as stated by respondents in their
brief. This is simply a liability of the Trust Company, and the
fact that it is secured by a mortgage cannot alter its complexion. 'In
order to ascertain the capital and surplus, it is necessary to find the
true value of the gross assets. From this must be deducted debts
and liabilities.' [State ex rel. v. State Tax Comm., 282 Mo. 213, 225.]
This is precisely what the Trust Company did. *It deducted its lia-
bilities from the gross value of its assets. That determined the
value of its stock.* It deducted the value of its real estate from the
value of its stock, because it pays the taxes levied on the real estate,
not on its equity therein. The taxes on the shares of stock, less the
value of the real estate, which is represented by the stock, are charged

against the stockholders. · The objection to the deduction of this particular liability is that it is secured by a mortgage on the real estate of the trust company and is not an investment of its funds. *It is still a corporate liability which affects the value of the shares of stock."* (Italics ours.)

It cannot be seriously questioned, we think, that the several items of accrued taxes (whether the same be actually payable on the date of the assessment and determination of the value of the shares of the capital stock of the relator banks herein, which date is June 1, 1926, or whether the same be actually payable after said date) and of accrued interest, due to depositors of relator banks, but actually payable after June 1, 1926, constitute, and fall within the category of, debts or liabilities of said relator banks. It appears to our minds that such items of accrued taxes and of accrued interest are just as much debts and liabilities of relator banks, which must be paid and discharged by relator banks, as are the promissory notes and other paper obligations executed and issued by said banks, and outstanding on June 1, 1926, the date on which the value of the shares of capital stock of said banks is determinable for the purpose of assessment and taxation. By way of illustration, let us assume that the relator banks had closed their books of account and had gone into voluntary liquidation on June 1, 1926. What would have been the value of their assets on that date? What would have been lawfully distributable to the shareholders of said banks on that date; and what would have been the actual, true, or real value of the shares of the capital stock of relator banks on that date? Obviously, only the pecuniary value of the assets of said banks remaining for distribution to the shareholders after the payment and discharge of all debts and liabilities of said banks, including the items of accrued taxes and accrued interest owing by the banks on the date of liquidation, for certainly there could be no lawful distribution to the shareholders without first making provision for the payment and discharge of accrued taxes, accrued interest, and all other debts and liabilities, of whatever nature, owing by the banks on the date of liquidation. [14a C. J. 1196; Avery v. Bank, 221 Mo. 71, 85.] It seems clear to us that the actual, real and true value of the shares of the capital stock of relator banks can only be determined and ascertained by deducting from the gross value of the assets of said banks the accrued debts and liabilities of the relator banks here in controversy. The Constitution of this State (Art. X, Sec. 4) requires that "all property subject to taxation shall be taxed in proportion to its value." Under our Constitution, the species of property taxed (whether it be tangible property, real or personal, or whether it be the shares of the capital stock of a banking corporation) must be taxed "in proportion to its *value*," i. e., the actual or real value; not a false or fictitious value,

1060

but a value which is neither inflated nor deflated. In ascertaining and determining the true value of the shares of the capital stock of relator banks, for the purpose of assessing and taxing such shares, the corporate liabilities of the banks, whether such liabilities be in the nature of accrued taxes, interest, outstanding promissory notes, or bills and accounts payable, must be deducted from the total, or gross, value of the assets of said banks, because such corporate liabilities, regardless of their nature and form, affect the value of the capital stock of said banks. As we said in State ex rel. Johnson v. Buder, supra: "Unless this deduction is made, the value of the stock will be, to that extent, inflated and fictitious." By adding such corporate liabilities of the relator banks to the value of the assets returned to the Assessor of the City of St. Louis by the relator banks, for the purpose of assessing and taxing the shares of the capital stock of said banks, the respondents herein have given to such shares of stock an inflated and fictitious value, whereas such shares of stock must be assessed and taxed on the basis of their real and true value.

Learned counsel for respondents direct our attention to the decisions of this court in State ex rel. v. Casey, 210 Mo. 235; State ex rel. v. Johnston, 214 Mo. 656; St. Louis Lodge, etc. v. Koeln, 262 Mo. 444; and State ex rel. v. Gehner (Mo. Sup.), 294 S W. 1017: wherein we held it to be the policy of our law, constitutional and statutory, that no species of property other than that specifically enumerated and excepted shall be exempt from taxation. The cases cited by respondents were rightly ruled upon the facts therein presented, but they have no application to the facts presented in the instant proceedings, nor do they bear upon the legal question to be determined in the instant proceedings. There is presented by the record herein no question of the *exemption* of property from taxation. Relators are not asking herein that any property be *exempted* from taxation; on the contrary, relators concede that the shares of their corporate stock are liable to assessment and taxation, but relators are insisting that such shares of stock must be assessed and taxed upon their real and true value, and not upon an inflated and fictitious value.

The action of the respondents (acting as the Board of Equalization of the City of St. Louis), in assessing property for taxation, is clearly judicial and is subject to review on writ of *certiorari* issuing from this court. [State v. St. Louis County Court, 47 Mo. 594; Ward v. Board of Equalization, 135 Mo. 309; State ex rel. v. Casey, 210 Mo. 235; State ex rel. v. Hall, 282 Mo. 425; State ex rel. v. Buder, 295 Mo. 63.]

It follows that the action of the Board of Equalization of the City of St. Louis, as evidenced by the findings and orders of said board, made and entered on March 29, 1927, was illegal, and that the record of said board increasing the assessment against the shares of the

capital stock of relator United States Bank, in the sum of $35,887.65 (which record has been brought before us for review in cause No. 28293), and the record of said board increasing the assessment against the shares of the capital stock of relator State National Bank, in the sum of $134,149.82 (which record has been brought before us for review in cause No. 28294), must be quashed. It is so ordered. *Lindsay* and *Ellison, CC.,* concur.

PER CURIAM:—The foregoing opinion by SEDDON, C., is adopted as the opinion of the court. All of the judges concur.