**MERCANTILE BANK NATIONAL ASSOCIATION, Respondent,**

v.

**Paul BERRA, Ronald A. Leggett, City of St. Louis, Board of Equalization, Appellants.**

No. 72350.

Supreme Court of Missouri, En Banc.

Sept. 11, 1990.

James J. Wilson, City Counselor, Edward J. Hanlon, Assoc. City Counselor, Elkin L. Kistner, Asst. City Counselor, St. Louis, for appellants.

Kathryn A. Woollard, William J. Falk, Richard L. Lawton, St. Louis, for respondent.

Juan D. Keller, Donald L. Mariotto, St. Louis, for amicus curiae, Boatmen's Bank.

RENDLEN, Judge.

Appellants challenge the constitutionality of § 148.110, RSMo 1986, which provides that the Banking Institutions Tax shall be a substitute for the former bank shares tax and "for all taxes on all tangible and intangible personal property of all banking institutions subject to the provisions of sections 148.010 to 148.110." The trial court found the statute valid as measured against the specifically enumerated exemptions from property taxation in Mo. Const. art. X, § 6. Because the issues involve the constitutionality of the statute, as well as the construction of the revenue laws, the cause falls within our original appellate jurisdiction. Mo. Const. art. V, § 3. We affirm.

In January 1988, the Assessor for the City of St. Louis notified Mercantile of his intention to add to the tax rolls Mercantile's tangible personal property not held for lease or rental to others. On May 16 of that year, the City Board of Equalization notified Mercantile of the assessment of its tangible personal property located at each of its St. Louis offices, and on May 25, Mercantile appeared to contest that assessment. The Board determined Mercantile's property would be taxed as assessed and Mercantile, submitting a tax return under protest for its $396,857.88 liability, then filed a petition for review in the circuit court of the City of St. Louis, naming as defendants the Board, the city, the Assessor and the Collector of Revenue. The trial court reversed the order of assessment, accepting Mercantile's claim that it was exempted from personal property taxation by § 148.110.

To place the issues in perspective, we briefly review the history of Missouri bank taxing laws. In 1835, Missouri banks both state and national were taxed by means of a share tax, Revenue Act of 1835, art. I, § 1, RSMo 1835 at 529. National banks then enjoyed immunity from state taxation, and the share tax, which operated upon the shareholder though collected by the banks, was the only permissible means of reaching them. *See Third National Bank of Louisville v. Stone*, 174 U.S. 432, 434, 19 S.Ct. 759, 760, 43 L.Ed. 1035 (1899). Because Missouri consistently maintained a policy of taxing state banks in the same manner as those operating under national charters, thus maintaining tax parity between the two, *see State ex rel. Miller v. Shryack*, 179 Mo. 424, 78 S.W. 808, 812 (1904), the share tax also operated upon state banks, which were otherwise spared taxation. That the state banks, like the national banks, were exempted from personal property taxation is demonstrated by the following excerpt from the statutes of 1899:

**Sec. 9152. Personal property of business and manufacturing corporations, assessed where.** All personal property of business and manufacturing corpora-tions shall be taxable in the county in which such property may be situated on the 1st day of June of the year for which such taxes may be assessed ... *This section shall not apply to railroad or banking corporations.*

§ 9152, RSMo 1899 (emphasis added.)[1] The restrictions on national bank taxation were gradually relaxed over the years and the state taxation plan was amended accordingly (for example, taxation of banks' real property was permitted). In *State ex rel. United States Bank v. Gehner*, 319 Mo. 1048, 5 S.W.2d 40, 43 (1928), the bank taxation mechanism was aptly described in this manner:

Under the scheme, or system, of taxation in effect in this state, banks (whether they be domestic or national) pay taxes only upon the assessed value of the real estate corporately owned by them. All personal property, of whatsoever kind or nature, corporately owned by banks, domestic or national, located in this state, is not taxed directly, but is taxed indirectly by levying a tax against the shares of the capital stock of each bank.

*See also State ex rel. Koeln v. Lesser*, 237 Mo. 310, 141 S.W. 888, 892 (1911). Changes in federal regulation of national bank taxation and in the state property tax system prompted the framers of the 1945 Constitution to promulgate art. X § 4(c), which provided that the General Assembly could substitute another form of taxation for the tax on bank shares. The text of art. X, § 4(c) reads as follows:

**Section 4(c). Assessment, levy, collection and distribution of tax on intangibles.** All taxes on property in class 3 [intangible personal property] and its subclasses, *and the tax under any other form of taxation substituted by the general assembly for the tax on bank shares*, shall be assessed, levied and collected by the state and returned as provided by law, less two percent for collection, to the counties and other political subdivisions of their origin, in proportion to the respective local rates of levy.

(Emphasis added.)

---

1. This statute was carried forward as § 11356, RSMo 1909, and § 10958, RSMo 1939.

At that time federal law allowed, in addition to an ad valorem tax on realty, four modes of state taxation on national banks, including (1) share tax, (2) inclusion of stock dividends in the taxable income of the shareholder, (3) income tax on the earnings of the bank, and (4) franchise tax based upon the bank's income. Against this backdrop, art. X, § 4(c) was adopted in the Constitution of 1945 as part of an overhaul of the state's personal property tax structure. The legislature promptly responded with the adoption of the Bank Tax Law of 1946, codified at § 148.030, RSMo, which provided for a franchise tax to be exacted on each bank at a rate fixed at seven percent of its net income, minus the greater of twenty-five dollars or one-twentieth of one percent of the par value of the taxpayer's shares and surplus employed in this state. Section 148.110 specifically provided:

> It is the purpose and intent of the general assembly to *substitute* the tax provided by sections 148.010 to 148.110 *for the tax on bank shares* which was imposed by section 10959, RSMo 1939, *and for all taxes on all tangible and intangible personal property* of all banking institutions subject to the provisions of sections 148.010 to 148.110.

(Emphasis added.)

Although the constitutionality of § 148.110 has not previously been challenged, the dicta in our cases indicate its validity has been tacitly assumed. In *General American Life Insurance Co. v. Bates*, 363 Mo. 143, 249 S.W.2d 458 (banc 1952), we held that the premium tax on insurance companies imposed "in lieu of" all other taxes on their intangible personal property, § 148.370, RSMo 1949, was an unconstitutional exemption from property taxation. There the taxing authorities sought to bolster their argument by referring to the substitution clause of Mo. Const. art. 10, § 4(c) ("the tax under any other form of taxation substituted by the general assembly for the tax on bank shares"), arguing that the legislature was

empowered to enact laws providing substitutes for intangible personal property tax. The *Bates* Court noted that art. 10, § 4(c) was adopted in light of the history of the taxation of state and national banks and was "not an assumption of the existence of general authority in the lawmakers to enact substitute tax legislation in contravention of specific constitutional limitations." *Id.* 249 S.W.2d at 465.

*William A. Straub, Inc. v. City of St. Louis*, 506 S.W.2d 377 (Mo.1974), held the City of St. Louis could not assess personal property taxes on lessees of personal property owned by banks.[2] The city argued § 148.110 created a personal property tax exemption, which was not transferrable to others, and in response the Court stated:

> the statute does not speak in terms of exemption from taxation ... Section 148.110 states an intention on the part of the General Assembly to *substitute* a different tax, namely, the [bank tax], for other specified taxes, including the one on tangible personal property. The [bank tax] is expressly stated to be a substitution for the personal property tax. One is in lieu of the other. An exemption from tax is not involved.

*Id.* at 380.

In a case analogous to that at bar, this Court declared the constitutional invalidity of § 148.620.3, RSMo (Cum.Supp.1984), which provided that the credit union and savings and loan tax was to be "exclusive and in lieu of all other taxes against and upon credit unions and associations, their property, or income," with certain enumerated exceptions. *Arsenal Credit Union v. Giles*, 715 S.W.2d 918 (Mo. banc 1986). The financial institutions appealing in that case relied upon *Straub*, as do appellants here, but this Court stated:

> The *Straub* court did not address the constitutional question decided in *Bates* or any other issue of invalidity ... This Court addressed no constitutional issue in *Straub* for at least two readily appar-

---

**2.** A 1972 amendment to § 148.110 providing that the banking institutions tax was *not* a substitute for personal property tax on property

leased to others was not in effect during the tax years questioned in *Straub*.

ent reasons: (1) no such issue was raised and (2) the type of arrangement provided by § 148.110, RSMo 1969 was specifically permitted for bank shares by Mo. Const. art. X, § 4(c).

*Id.* at 924–25. Further, *"[a]t no point in Straub* did this Court attempt to distinguish between a proper 'substitution' and an impermissible 'exemption' to resolve a constitutional challenge based upon Mo. Const. art. X, § 6 (1972)." *Id.* at 925 n. 14. The Court explained that its decision in *Arsenal* was premised on the analytical framework established in *Bates*, noting that the nature of the constitutional infirmity of § 148.370, as determined in *Bates*, "was that it exacted '*no*' tax upon intangible personal property while substituting an excise tax *merely authorized* by Mo. Const. art. X, § 4(a)." *Id.* at 924. Finding the same type of infirmity in *Arsenal*, the Court added that "there was never any specific constitutional grant of authority for either exclusion." *Id.* at 925 n. 14.

Against this backdrop, we examine the supporting arguments and analysis of the specific question raised here: Does § 148.110 provide an unconstitutional exemption from personal property taxation? The City would have us follow what it perceives as the theme of *Bates* and *Arsenal* and thus invalidate § 148.110, which allegedly substitutes another form of taxation "in lieu of" personal property tax without constitutional exemptions from personal property taxation. However, as indicated in the dicta in those cases, art. X, § 4(c) specifically allows for the substitution of "any other form of taxation" for the former tax on bank shares. The City contends the text of § 148.110 goes beyond the bounds of art. X, § 4(c) by substituting the banking institutions tax:

> for the tax on bank shares which was imposed by section 10959, RSMo 1939, *and for all taxes on all* tangible and intangible *personal property* of all banking institutions subject to the provisions of sections 148.010 to 148.110, except taxes on tangible personal property owned by the taxpayer and held for lease or rental to others and [except] for all

property taxes on the shares of such banking institutions.

§ 148.110 (emphasis added.)

■ The trial court's holding which declared the statute valid rested on its view that "[t]he tax on bank shares was a property tax on the tangible and intangible personal property of banks, and was the exclusive method by which a property tax was imposed on the tangible personal property of banks." Mercantile relies, among others, on the history of bank taxation statutes and the debates of the constitutional convention of 1945 in support of its argument that art. X, § 4(c) was intended to permit a substitute for property taxation. It first notes, as the trial court properly found, that this Court had recognized the former bank share tax as a tax on personal property. In this connection we stated:

> unless we say that a tax on the shares of stock based on a valuation of the personal property of the bank is a tax on the personal property itself, we must say that the General Assembly has violated the Constitution in exempting that personal property from taxation.

*State ex rel. Campbell v. Brinkop*, 238 Mo. 298, 143 S.W. 444 (1911), *overruled on other grounds, State ex rel. American Century Insurance Co. v. Gehner*, 320 Mo. 901, 9 S.W.2d 621 (1928). Mercantile also references the following excerpt from the constitutional convention debates pertaining to the adoption of art. X, § 4(c):

> *Under the circumstances, we have every right to expect that the General Assembly, instead of continuing to impose it, the ad valorem tax, or property tax [share tax] to the banks, will shift over to one of the other four or other three methods of taxation on banks and they will impose probably an excise tax measured by the earnings of the bank* and will fix the rate so that it will at least preserve the revenue that now comes from the tax on bank shares, but if they did that in the form of a franchise or excise tax, of course it would be state revenue unless we put in a provision to the contrary in the Constitution, *and so*

*we put this provision in providing that if they do substitute other than a property tax on the banks, that the proceeds will come back to the local communities.*

*Verbatim Stenotype Transcription of Debates,* 1943–1944 Mo. Const. Convention 5007 (emphasis added.) This excerpt indeed manifests an understanding on the part of the framers that another form of tax, probably an excise tax, may be substituted for the "property" tax on bank shares. While the record of the debates is not controlling, the language of § 4(c) approved by the voters is consistent with the view expressed in the debates. Commencing with the proposition that statutes are presumed constitutional, *Findley v. City of Kansas City,* 782 S.W.2d 393, 394 (Mo. banc 1990), and having considered the arguments and briefs of the parties, we have concluded that § 4(c) constitutes an exemption from personal property taxation in addition to those enumerated in § 6.

As discussed above, direct taxation of personal property by states against national banks has never been permitted, and Missouri's policy has always been to maintain tax parity between state and national banks. *See State ex rel. Miller v. Shryack,* 78 S.W. at 811–12. As the referenced excerpt from the debates demonstrates, the framers were keenly aware of these limits and established policies, and with that awareness drafted the language of § 4(c). Section 148.110 implements the scheme contemplated by this constitutional provision that the bank institutions tax may be substituted for the bank share tax and for taxes on all personal property of banking institutions, and this is consistent with the long tradition of tax parity between state and national banks. The limiting language of art. X, § 6 which provides "all laws exempting from taxation property other than the property enumerated in this article shall be void" is the organic law curtailing legislative power to grant exemptions, and absent the constitutional authority provided by art. X, § 4(c) the legislature would have been powerless to validly promulgate and adopt § 148.110. However, we hold § 4(c) confers such power and accordingly deem the statute a proper exercise of legislative authority.

For their final contention, appellants would have us conclude the banking institutions tax violates the uniformity requirement of art. X, § 3, and the inhibitions on property taxation contained in art. X, § 4(a) and (b). They contend the tax violates § 4(a) in that it does not classify personal property "solely on the nature and characteristics of the property", but "instead works a subclassification based on the nature and business of its owners; to wit; banking institutions." They further argue the tax violates § 4(b) in not taxing tangible personal property based on "value or percentage of its value as may be fixed by law." This contention fails because the bank tax is not a property tax, but a substitute therefor, and "we [do not determine] the nature of a tax ... by the character of the tax it displaces." *Centerre Bank of Crane v. Director of Revenue,* 744 S.W.2d 754, 756–57 (Mo. banc 1988). The bank tax is an excise exacted upon the corporate franchise. *Id.* The situation here is distinguishable from that in *Bates,* where the Court held the statute under examination was an impermissible exemption from personal property tax and hence violative of the requirements of § 4 as well as § 6. 249 S.W.2d at 464. As to the uniformity requirement, Section 3 provides that taxes "shall be uniform upon the same class or subclass of subjects within the territorial limits of the authority levying the tax." An excise tax meets this requirement if it "operate[s] alike upon all within the same class of subjects." *Bates,* 249 S.W.2d at 458. The banking tax, which we have held is otherwise constitutional, does not run afoul the uniformity requirement.

Affirmed.

BLACKMAR, C.J., ROBERTSON, HIGGINS, COVINGTON, and HOLSTEIN, JJ., and SEILER, Senior Judge, concur.

BILLINGS, J., not sitting.